# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DARREN M. ROWE,** | ) |
| Petitioner, | ) Case No. 7:18CV00383 |
| v. | ) **OPINION** |
| **HAROLD W. CLARKE,** | ) By: James P. Jones |
| | ) United States District Judge |
| Respondent. | ) |

*Darren M. Rowe, Pro Se Petitioner; Virginia B. Theisen, Assistant Attorney General, Office of the Attorney General, Richmond, Virginia, for Respondent.*

In this Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, a Virginia inmate proceeding pro se, contends that his confinement pursuant to a 2014 Judgment entered by a state court is unconstitutional. Upon review of the record, I conclude that the respondent's Motion to Dismiss must be granted, because the petition was untimely filed.

I.

From 2010 through 2013, Rowe was in an on-again, off-again relationship with Amanda Fitzgerald of Louisa County, Virginia.[1] Fitzgerald had previously been in an on-again, off-again relationship with O'Brien Johnson for ten years,

---

[1] This summary of facts about events is taken from the transcripts of the guilty plea and sentencing hearings conducted by the Louisa County Circuit Court in 2014, and the presentence report. The facts are undisputed unless otherwise noted.

which continued while she was seeing Rowe. Rowe testified that Johnson had made threats against him.

On the evening of February 21, 2013, Rowe and his four-year-old daughter, DR, fell asleep at Fitzgerald's apartment while watching a movie. Around 11:00 p.m., all three of them were awakened by someone hitting the window of the apartment and shouting for Rowe to come outside. DR, who was closest to the window, began crying. Rowe and Fitzgerald saw Johnson run up on the hood of Rowe's car, stomp on its roof, and then drive away.[2] Rowe ran out of the apartment and got in his car, where he kept a .45 caliber firearm. He put the gun in his front pocket and drove off, intending to go to Johnson's mother's house to vandalize Johnson's car.

On the way, Rowe saw Johnson sitting in his car, parked at the Louisa Mini-Mart. Rowe pulled in beside Johnson's car, jumped out of his vehicle, ran over, and kicked Johnson's car. Johnson got out and started shouting as he came around the car toward Rowe. Rowe claims that as Johnson came at him, he seemed to be reaching toward his pocket for something — possibly a weapon. Rowe then pulled his firearm from his jacket pocket and pointed it at Johnson to stop him from charging. Johnson did stop for a moment and then charged at Rowe, shouting, shoot me, n*****, shoot me, n*****. Rowe shot Johnson, and Johnson fell to the

---

[2] At the preliminary hearing, Johnson denied that he vandalized Rowe's car or visited Fitzgerald's apartment on February 21, 2013.

ground. Rowe claims that less than five minutes passed between Johnson's actions at Fitzgerald's apartment and the shooting.

Johnson told police that he was at the mini-mart, parked in his car, talking to some friends on February 21, 2013, when Rowe unexpectedly arrived and confronted him. According to Johnson, the two men exchanged words, and then Rowe pulled out a firearm. Johnson asked, what are you going to do, shoot me? Rowe did, and Johnson fell, no longer able to feel or move his legs.

After shooting Johnson, Rowe panicked and drove away. At some point, he went back to Fitzgerald's house, picked up his daughter, and disposed of the firearm. Police arrested Rowe the next morning at his mother's house.

Rescue workers assisting Johnson found a single bullet wound on his left side, just under the armpit. Transported to the University of Virginia hospital, Johnson underwent emergency surgery. The surgeons removed the bullet, his spleen, and part of his large intestine. Because the bullet passed close to Johnson's spine, they believed he would possibly be paralyzed.

On February 26, 2014, Rowe entered a guilty plea in the Circuit Court for Louisa County, pursuant to a written Plea Agreement, to charges of aggravated malicious wounding and use of a firearm in the commission of that felony. The latter offense carried a mandatory minimum three-year sentence. As to the former offense, the Plea Agreement provided for a maximum sentence of 50 years and an

active term of incarceration of no more than 20 years in prison. Without the Plea Agreement, if convicted after a trial, the minimum total sentence the jury could have imposed on Rowe was 23 years.

On July 2, 2014, the trial court conducted a lengthy sentencing hearing. Johnson, in a wheelchair, testified that he had not been able to walk since the shooting. Fitzgerald and Rowe testified about seeing Johnson damage Rowe's car. Rowe's former employers, his uncle, his mother and her fiancé, and his grandmother testified as character witnesses for Rowe. They described an intelligent, hard-working employee, a gentle and loving father, who had never displayed a tendency for violence and had no criminal history. All of them testified that the shooting was shocking to them, because it was so out of character for Rowe, as they had known him.

The trial judge told Rowe that he would have imposed the 20-year active prison sentence permitted by the Plea Agreement if not for Rowe's good behavior before the crime. The judge stated that there was no viable argument for self-defense or legal provocation, but that substantial mitigating evidence existed for sentencing. The trial court sentenced Rowe to 40 years in prison for the aggravated malicious wounding conviction, with 30 years suspended, and to three years in prison for the firearm offense. The court entered its final order on August 28, 2014. Rowe did not appeal.

In April 2016, Rowe filed a Petition for a Writ of Habeas Corpus in the Circuit Court for Louisa County. Rowe alleged that trial counsel provided ineffective assistance during the pretrial investigation, plea bargaining, and sentencing phases of the proceedings and thereafter, by failing to consult with him about an appeal. The circuit court denied the habeas petition, and Rowe appealed. The Supreme Court of Virginia denied his habeas appeal in November of 2017, and the Supreme Court of the United States denied certiorari in May of 2018.

On August 1, 2018, Rowe executed this habeas petition under § 2254, alleging that counsel provided ineffective assistance by (A) failing to investigate and interview critical witnesses before the guilty plea; (B) failing to advise Rowe of the possibility of a heat of passion defense; (C) causing Rowe's guilty plea to be unknowing, involuntary, and unintelligent; (D) failing to timely object to certain statements of the prosecutor at sentencing; and (E) failing to consult with Rowe regarding an appeal. The respondent has moved to dismiss Rowe's § 2254 claims as untimely filed, or in the alternative, procedurally defaulted, or without merit. Rowe has responded, making the matter ripe for disposition.

II.

The one-year period of limitation for filing a habeas petition under § 2254 begins to run on the latest of four dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

I conclude that Rowe's petition was untimely filed under § 2244(d)(1)(A). After the circuit court entered judgment on August 28, 2014, Rowe had 30 days to note an appeal. Va. Sup. Ct. R. 5A:6 (notice of appeal must be filed within 30 days of entry of final judgment). When he failed to do so by Monday, September 29, 2014, his convictions became final, and his federal habeas time clock under § 2244(d)(1)(A) began to run. *See Gonzales v. Thaler*, 565 U.S. 134, 149-50 (2012) (holding that when state prisoner does not seek appellate review, judgment becomes final when time for seeking direct review expires); Va. Code Ann. § 1-210(C) (extending time to file action to next court business day when filing period ends on weekend or holiday). Rowe's one-year federal filing period expired on

September 29, 2015. Thus, Rowe's § 2254 petition, executed years later on August 1, 2018, must be dismissed as untimely under § 2244(d)(1)(A), unless he demonstrates a factual basis on which to invoke another provision of § 2244(d)(1), or to warrant equitable tolling.[3]

Rowe argues that his federal filing period should be calculated under § 2244(d)(1)(B). To invoke this section, Rowe must demonstrate a state-created impediment that violated constitutional or federal laws, that also prevented him from timely filing his § 2254 petition. *Id.*

Rowe contends that the state impeded the timely filing of his § 2254 petition by (a) failing to appoint counsel to assist him in pursuing habeas corpus relief; and (b) omitting from the state habeas statute, Va. Code Ann. § 8.01-654, any notice of the federal filing period. Rowe alleges that he was untrained in legal matters and had no knowledge of federal law, including the time limit for filing a § 2254 petition. With no court appointed attorney for post-conviction proceedings, Rowe read and relied on the Virginia habeas time limit, which requires a state petition to "be filed within two years from the date of final judgment in the trial court," if no direct appeal was filed. Va. Code Ann. § 8.01-654(A)(2). By chance, while

---

[3] The federal filing period is tolled, or paused, during the pendency of a properly filed application for state post-conviction or other collateral review. *See* 28 U.S.C. § 2244(d)(2). Rowe did not file his state habeas petition until April 2016, eight months after his federal filing period expired. Thus, the pendency of his state petition did not toll the running of the federal time clock.

Rowe's state habeas appeal was pending in the Supreme Court of Virginia, another inmate mentioned the option to file a federal habeas petition under § 2254. Rowe then discovered the federal filing periods in 28 U.S.C. § 2244 — too late to file a timely § 2254 petition.

I cannot find that failure to appoint habeas counsel for Rowe constituted an impediment under § 2244(d)(1)(B). Rowe claims that the Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), required states to provide counsel for an inmate's initial state habeas corpus proceeding. He is mistaken.[4] On the contrary, it is well established that "in the postconviction context[,] prisoners have no constitutional right to counsel." *Lawrence v. Florida*, 549 U.S. 327, 336-37, (2007). Thus, the state court's failure to appoint an attorney for Rowe's state habeas proceedings was not unconstitutional or in violation of federal law and cannot qualify as an impediment under § 2244(d)(1)(B).

Similarly, I find no respect in which Virginia's habeas statute, § 8.01-654(A)(2), can qualify as an impediment under § 2244(d)(1)(B). The state statute

---

[4] Rather, *Martinez* held that a procedural default during state court proceedings "will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 132 S. Ct. at 1320. *See also Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014) ("[T]he Martinez rule explicitly relates to excusing a procedural default of ineffective-trial-counsel claims and does not apply to [the] statute of limitations [in § 2244(d)] or the tolling of that period."); *Meredith v. Clarke*, No. 7:15CV00502, 2015 WL 7783594, at *3 (W.D. Va. Dec. 3, 2015) (finding that *Martinez* created no basis for tolling of federal habeas filing period).

is not rendered unconstitutional merely because it does not mention federal habeas options and time limits. *See, e.g., Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (holding that federal statute of limitations is not extended where a state statute provides longer limitations period for state habeas petitions). Furthermore, Rowe fails to demonstrate that either the state statute or the lack of counsel prevented him from researching federal habeas law earlier and filing a timely federal petition. Accordingly, I cannot find that Rowe has demonstrated any impediment that entitles him to the federal filing period under § 2244(d)(1)(B).

Rowe also argues for equitable tolling. Equitable tolling occurs only if a petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010).[5] It is well established that a habeas petitioner's lack of legal education or knowledge are neither extraordinary nor external to a party's control, as required to trigger equitable tolling. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (collecting cases holding that pro se petitioner's "ignorance of the law is not a basis for equitable tolling"). Thus, I find no ground for equitable tolling based on Rowe's lack of habeas counsel or his own limited understanding of legal matters.

---

[5] I have omitted citations, internal quotation marks, or alterations here and elsewhere in this Opinion, unless otherwise noted.

Rowe also argues that I should reach the merits of his untimely § 2254 claims under the actual innocence exception recognized in *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (holding that defendant who demonstrates actual innocence of his crime of conviction may, in extraordinary circumstances, proceed with a habeas petition that is otherwise statutorily time-barred under § 2244(d)(1)); *see also Teleguz v. Zook*, 806 F.3d 803, 807 (4th Cir. 2015) ("a compelling showing of actual innocence enables a federal court to consider the merits of a petitioner's otherwise defaulted claims"). The actual innocence gateway is a rare phenomenon: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 329 (1995). This new "evidence must establish sufficient doubt about [a petitioner's] guilt to justify the conclusion that his [incarceration] would be a miscarriage of justice *unless* his conviction was the product of a fair trial." *Id.* at 316.

Rowe argues that if evidence not presented at trial were considered, no reasonable juror could deny from the totality of the evidence that he acted in the heat of passion, rather than with the malice required for a conviction of aggravated malicious wounding. Thus, Rowe contends that he would have been convicted of

the lesser-included crime of unlawful wounding, which carries a much lighter sentence.

The evidence on which Rowe rests his actual innocence argument includes testimony about: Rowe's normal, calm demeanor, lack of a criminal record, and close relationship with his daughter; Rowe's good work ethic; Johnson having made prior threats against Rowe; Johnson shouting and frightening Rowe's daughter and vandalizing Rowe's car less than five minutes before the shooting;[6] Rowe's testimony about how Johnson charged at him while screaming, shoot me n****; and testimony from two eyewitnesses who told investigators that they had overheard these comments from Johnson. Rowe admits that this evidence was available to him during the criminal proceedings. He contends that it is new in the actual innocence context, because it was not presented at the trial phase due to counsel's alleged ineffectiveness in advising against presenting a heat of passion defense at trial and in recommending the Plea Agreement instead. Rowe asserts that this unpresented evidence makes such a strong showing of his actual innocence of malicious wounding that it should qualify him for equitable tolling under *Schlup*. I cannot agree.

---

[6] Rowe asserts that he was "filled with hot blood" from Johnson's waking him up, scaring his daughter and making her cry, and damaging his car, to the point that Rowe became "a human 'time-bomb.'" Mem. Supp. Pet. 23, ECF No. 1-1.

"Without any *new* evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316 (emphasis added).

> To be credible, [a miscarriage of justice] claim requires petitioner to support his allegations of constitutional error with *new* reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial.

*Id.* at 324 (emphasis added). *See also Amrine v. Bowersox*, 238 F.3d 1023, 1028 (8th Cir. 2001) (holding that "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence"); *Hubbard v. Pinchak*, 378 F.3d 333, 341 (3d Cir. 2004) ("A defendant's own late-proffered testimony is not 'new' because it was available at trial. Hubbard merely chose not to present it to the jury. That choice does not open the gateway."); *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018), *cert. denied*, No. 18-940, 2019 WL 266857 (U.S. June 17, 2019) ("Evidence does not qualify as 'new' under the Schlup actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'" ); *but see Stedman v. Corcoran*, No. GLR-15-230, 2019 WL 1778634, at *5 n.4 (D. Md. Apr. 23, 2019) (noting that "a circuit split exists regarding whether 'new evidence' means

'newly discovered' or 'newly presented'" and the United States Court of Appeals for the Fourth Circuit has not addressed the issue).

Even if I could consider Rowe's unpresented evidence in support of his actual innocence argument, I cannot find that it meets the required standard under *Schlup*. Rowe was convicted of aggravated malicious wounding, a violation of Va. Code Ann. § 18.2-51.2(A). This section provides;

> If any person maliciously shoots, stabs, cuts or wounds any other person, or by any means causes bodily injury, with the intent to maim, disfigure, disable or kill, he shall be guilty of a Class 2 felony if the victim is thereby severely injured and is caused to suffer permanent and significant physical impairment.

Va. Code Ann. § 18.2-51.2(A). "The element of malicious wounding that distinguishes it from unlawful wounding is malice, expressed or implied, and malice, in its legal acceptation, means any wrongful act done willfully or purposefully." *Witherow v. Commonwealth*, 779 S.E.2d 223, 228 (Va. Ct. App. 2015). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation." *Id.*

On the other hand, "[d]eliberate and purposeful acts may nonetheless be done without malice if they are done in the heat of passion." *Id.* In fact,

> [m]alice and heat of passion are mutually exclusive; malice excludes passion, and passion presupposes the absence of malice. Heat of passion is determined by the nature and degree of the provocation and may be found upon rage, fear, or a combination of both. Heat of

> passion excludes malice when provocation reasonably produces fear that causes one to act on impulse without conscious reflection.

*Id.* "[I]t is settled law [in Virginia] that slight provocation does not suffice" to support a heat of passion defense. *Taylor v. Commonwealth*, No. 1673-89-2, 1992 WL 441839, at *6 (Va. Ct. App. Sept. 29, 1992). "Words alone, however insulting or contemptuous, are never a sufficient provocation to have that effect, at least where a deadly weapon is used." *Id.*

Even if the unpresented evidence from Rowe's petition and the sentencing hearing was now presented to a jury, it does not sufficiently support a heat of passion defense to open the actual innocence gateway recognized in *McQuiggin* and *Schlup*. Johnson's words and vandalism at Fitzgerald's house may have pushed Rowe into a rage. After Johnson left, however, Rowe made a conscious decision to go wreak revenge against Johnson's car, armed himself, and went searching for that car. When he found it, he provoked a confrontation with Johnson by kicking the man's car window. When Johnson shouted threats and charged around his car toward Rowe, Rowe made a conscious decision to display the firearm to scare Johnson into stopping. *Williams v. Commonwealth*, 767 S.E.2d 252, 259 (Va. Ct. App. 2015) (holding that defendant's testimony that he deliberately aimed gun with purpose of scaring victim reflects that his act of shooting was done "with a sedate, deliberate mind, and formed design," rather than "on impulse without conscious reflection"); *Graham v. Commonwealth*, 525

S.E.2d 567, 571 (Va. Ct. App. 2000) (finding "the evidence insufficient as a matter of law to justify a heat of passion instruction" where defendant testified that he "consciously abandoned his escape, armed himself, and started shooting," and thus "acted upon reflection and deliberation" rather than "on sudden provocation or from passion").

Given this background, I cannot find that Johnson's offensive words, his continued charge, and even his reaching back for a possible weapon that Rowe never saw sufficiently support a heat of passion defense to reduce Rowe's offense to unlawful wounding. Rather, I am satisfied that from the totality of the evidence, reasonable jurors could find him guilty of aggravated malicious wounding. Accordingly, I conclude that he has not met the miscarriage of justice exception or otherwise excused his untimely filing of this § 2254 petition under § 2244(d)(1). Therefore, I will grant the Motion to Dismiss.

A separate Final Order will be entered herewith.

DATED: September 6, 2019

/s/  James P. Jones
United States District Judge